**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | **CRIMINAL NO. 18-   (ABJ)** |
| v. | * | |
| | * | Violation:  22 U.S.C. §§ 612 and |
| | * | 618(a)(1) |
| **W. SAMUEL PATTEN,** | * | |
| | * | (Foreign Agents Registration Act) |
| Defendant. | * | |

*******

**CRIMINAL INFORMATION**

The United States Attorney for the District of Columbia and the National Security Division of the U.S. Department of Justice charge that:

1. From in or around 2014 until in or around 2018, both dates being approximate and inclusive, within the District of Columbia and elsewhere, the defendant W. SAMUEL PATTEN knowingly and willfully acted as an agent of a foreign principal, to wit, the Opposition Bloc (a Ukrainian political party) and its members, without registering with the Attorney General, whose office in the Department of Justice is located in the District of Columbia, as required by law.

2. Beginning in or around 2014 to the present, PATTEN worked with a Russian national (Foreigner A) on lobbying and political consulting services. The two formed a company (Company A) in the United States, and were 50-50 partners. Beginning in or around 2015, Company A, among other things, advised the Opposition Bloc and members of that party, including a prominent Ukraine oligarch (Foreigner B). Company A performed political consulting services, which involved work within Ukraine as well as lobbying in the United States. As part of Company A's work, PATTEN travelled to Ukraine on numerous occasions, and met with

Foreigners A and B, and other foreigners. For this work, Foreigner B caused payments to be made to Company A through an offshore Cypriot account. From in or around the spring of 2015 through in or around 2017, Company A received over $1,000,000 for its work for the Opposition Bloc and other Ukraine consulting work, a portion of which was received as a result of conduct which violated the Foreign Agents Registration Act.

3. As part of his work for Company A, PATTEN violated the Foreign Agents Registration Act by contacting members of the United States legislative and executive branches as well as the media. Such communications included efforts to set up meetings between Foreigners A and B with Members of Congress and staff. PATTEN also drafted talking points for Foreigner B for his meetings on Capitol Hill as well as talking points for Congressional staffers to use to convince other Congressional Members and staff to meet with Foreigner B. The activity was undertaken to promote the interests of Foreigner B and the Opposition Bloc to influence United States policy. In addition, during this time period, PATTEN and Foreigner A assisted Foreigner B in drafting periodic articles (e.g. "op-eds") targeted at the United States press.

4. Specifically, PATTEN in coordination with Foreigner A worked on setting up meetings in Washington, D.C., from on or about January 19, 2015, through on or about January 21, 2015, between Foreigner B and (a) Members of Congress and their staff – specifically, Senators on the Foreign Relations Committee and Representatives on the House Committee on Foreign Affairs; (b) the Executive Branch – including officials from the U.S. Department of State; and (c) numerous members of the United States media. PATTEN also drafted and provided staffers with points of discussion concerning Foreigner B and his message with respect to Ukraine. As another example, in or around May 2016, PATTEN and Foreigner A wrote a letter for Foreigner B to use in lobbying a high-ranking member of the Department of State regarding recent developments on the Ukrainian

Central Election Commission, and requested the official's engagement on the issue.

5.     PATTEN also drafted op-ed pieces on behalf of Foreigner B and then placed them with United States media. For instance, in or around January 2017, PATTEN and Foreigner A drafted an op-ed article on behalf of Foreigner B to address concerns regarding Ukraine's ability to work effectively with the new United States administration. PATTEN then attempted to get the op-ed article placed with various United States media outlets. In or around February 2017, PATTEN succeeded in having the op-ed article published in a national United States media outlet. Prior to the publication of the op-ed, PATTEN facilitated Foreigner B's signing the required United States media outlet's license agreement.

6.     PATTEN knew at the time that he took all of the actions described above that the Foreign Agents Registration Act required him to register in order to engage legally in such United States activities for a foreign principal. PATTEN had previously filed under the Foreign Agents Registration Act for another client. PATTEN and Foreigner A inquired of Foreigner B whether Company A could file under the Foreign Agents Registration Act; Foreigner B said in substance that he did not want them to register now, but they could eventually do so at an unspecified future

date. As a result, PATTEN and Foreigner A never filed, timely or not, and continued to work for and represent the Opposition Bloc and members of that party, including Foreigner B.

**(Violation of the Foreign Agents Registration Act, pursuant to Title 22, Section 612 and 618(a)(1))**

                                              JESSIE K. LIU
                                              United States Attorney

By: _____
      Michael C. DiLorenzo
      Assistant United States Attorney

      Scott A. Claffee
      Trial Attorney
      U.S. Department of Justice
      National Security Division