```
1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLUMBIA
2

3    United States of America,     ) Criminal Action
                                    ) No. 18-cr-260
4                     Plaintiff,    )
                                    ) ARRAIGNMENT AND
5    vs.                            ) PLEA HEARING
                                    )
6    W. Samuel Patten,              ) Washington, DC
                                    ) August 31, 2018
7                     Defendant.    ) Time:  11:00 a.m.
     _____
8
             TRANSCRIPT OF ARRAIGNMENT AND PLEA HEARING
9                           HELD BEFORE
          THE HONORABLE JUDGE AMY BERMAN JACKSON
10               UNITED STATES DISTRICT JUDGE
     _____
11
                     A P P E A R A N C E S
12
     For the Plaintiff: Michael C. DiLorenzo
13                       U.S. ATTORNEY'S OFFICE FOR THE
                           DISTRICT OF COLUMBIA
14                       555 Fourth Street, NW
                         Washington, DC 20530
15                       (202) 252-7809
                         Email:  Michael.dilorenzo@usdoj.gov
16   Also:               Scott Claffee
                         U.S. Department of Justice
17                       National Security Division

18   For the Defendant:  Stuart Alexander Sears
                         SCHERTLER & ONORATO, LLP
19                       901 New York Avenue, NW
                         Suite 500 West
20                       Washington, DC 20001
                         (202) 628-4199
21                       Email:  Ssears@schertlerlaw.com

22   Pretrial Services: Shay Holman

23   Court Reporter:     Janice E. Dickman, RMR, CRR
                         Official Court Reporter
24                       United States Courthouse, Room 6523
                         333 Constitution Avenue, NW
25                       Washington, DC  20001
                         202-354-3267
```

```
1    *  *  *  *  *  *  *P R O C E E D I N G S*  *  *  *  *  *  *

2              THE COURTROOM DEPUTY:  Good morning, Your Honor.

3              This morning we have case number 18-260, the United

4    States of America v. W Samuel Patten.  Mr. Patten is present in

5    the courtroom.  Your Honor, the Pretrial Services Agency

6    officer who's present for these proceedings is Miss Holman.

7              Will counsel for the parties please approach the

8    lectern, identify yourself for the record.

9              MR. DiLORENZO:  Good morning, Your Honor.  On behalf

10   of the government, Michael DiLorenzo.  I'm with the U.S.

11   Attorney's office.

12             THE COURT:  Good morning.

13             MR. DiLORENZO:  And we also have Mr. Scott Claffee,

14   who's with the National Security Division of the Department of

15   Justice.

16             THE COURT:  All right.  Good morning.

17             MR. DiLORENZO:  And just before we start, I want to

18   thank the Court for its patience in this matter.

19             THE COURT:  All right.  No problem.

20             MR. SEARS:  Good morning, Your Honor.  Stuart Sears

21   on behalf of Mr. Patten, who is present in the courtroom.

22             THE COURT:  All right.  Good morning.  And you can

23   stay there.

24             I take it we're here because the defendant wishes to

25   enter a plea of guilty at this time; is that correct, Mr.
```

1    Sears?

2              MR. SEARS:  That's correct, Your Honor.

3              THE COURT:  All right.  Your client can join you at

4    the lectern.  I believe we need to arraign him on the

5    information and also ask him some questions in connection with

6    both of those things.  Mr. Haley is going to need to swear him

7    in, so let's start there.

8              THE COURTROOM DEPUTY:  Are you W. Samuel Patten?

9              THE DEFENDANT:  I am.

10             THE COURTROOM DEPUTY:  Are you the person named in

11   the information?

12             THE DEFENDANT:  Yes, I am.

13             THE COURTROOM DEPUTY:  Your Honor, may the record

14   reflect that both the defendant and his attorney have received

15   a copy of the information which has been filed in this case.

16             Mr. Patten, you are charged in criminal case number

17   18-260, in a one-count information charging you with the

18   following:  22 United States Code §§ 612 and 618(a)(1),

19   violation of the Foreign Agents Registration Act.  Do you waive

20   formal reading of the information?

21             THE DEFENDANT:  I do.

22             THE COURT:  For purposes of arraignment, how do you

23   wish to plead?

24             THE DEFENDANT:  Not guilty.

25             THE COURT:  Please raise your right hand.

```
1                        W.   SAMUEL PATTEN,

2      having been first duly sworn, was examined and testified as

3      follows:

4                THE COURT:  All right.  Thank you.

5                Mr. Patten, the purpose of today's hearing is for you

6      to make a decision, whether you want to go to trial on the

7      government's charges against you or whether you want to enter a

8      plea of guilty.  Obviously, it's an important decision and so

9      the first thing I have to make sure is that you understand

10     everything that's going on in the courtroom.  So I want to let

11     you know if I ask you a question that's unclear and you don't

12     understand it, feel free to ask me to rephrase it.  And also,

13     if I ask you a question and you think you would like to talk to

14     your attorney before you answer it, you have the opportunity to

15     do that, just let me know.  So do you understand that much?

16                THE DEFENDANT:  Yes, Your Honor.

17                THE COURT:  And do you also understand that you've

18     just been sworn, so any statements that you make to me that

19     aren't truthful could themselves be a crime of making a false

20     statement or perjury.  Do you understand that?

21                THE DEFENDANT:  I do, Your Honor.

22                THE COURT:  All right.  So, Mr. Sears, as I

23     understand it, he's going to plead guilty to the information

24     that charges a violation of the Foreign Agent Registration Act.

25     And the government is waiving its request at this time that he
```

1    be detained between now and sentencing, is that correct?

2              MR. SEARS:  That's correct, Your Honor.

3              THE COURT:  All right.  Now, Mr. Patten, I'm the one

4    who has to decide whether to accept your guilty plea this

5    morning.  And to do that I have to make sure that you

6    understand the terms of the plea and the consequences of the

7    plea.  And so the law requires me to ask you a number of

8    questions.  Some of them seem personal and some may seem

9    self-evident, but they're all required by law so that I can

10   assure myself that you know what you are doing today.

11             So the first question I have for you is:  How old are

12   you?

13             THE DEFENDANT:  I'm 47 years old, Your Honor.

14             THE COURT:  Okay.  And can you read and write, sir?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  How far did you go in school?

17             THE DEFENDANT:  To a bachelor's degree, Your Honor.

18             THE COURT:  Okay.  And where were you born?

19             THE DEFENDANT:  I was born here in the District, Your

20   Honor.

21             THE COURT:  Okay.  Have you taken any alcohol or

22   drugs in the last 48 hours, or any medicine that could affect

23   your ability to understand what you're doing this morning by

24   pleading guilty?

25             THE DEFENDANT:  I have not, Your Honor.

1                    THE COURT:  Have you ever received any treatment for

2        any type of mental illness or emotional disturbance?

3                    THE DEFENDANT:  Yes, Your Honor.

4                    THE COURT:  Okay.  Do you want to just summarize that

5        briefly for me?

6                    THE DEFENDANT:  I am currently under the care of a

7        psychiatrist, Your Honor.

8                    THE COURT:  Is this in connection with depression or

9        anxiety?

10                   THE DEFENDANT:  That is correct, Your Honor.

11                   THE COURT:  Okay.  And do you take medication as part

12       of that?

13                   THE DEFENDANT:  I do, Your Honor.

14                   THE COURT:  Okay.  And did you take the medication

15       today?

16                   THE DEFENDANT:  Yes, Your Honor.

17                   THE COURT:  And does it make you drowsy or affect

18       your ability to understand what's going on this morning?

19                   THE DEFENDANT:  On the contrary, Your Honor.  No.

20                   THE COURT:  Okay.  And, Mr. Sears, I take it you

21       don't have any concerns about his competency to go forward this

22       morning based on that information?

23                   MR. SEARS:  None at all.

24                   THE COURT:  Have you received a copy of the

25       information, which is the piece of paper that the written

1    charge is on pending against you, and have you discussed the

2    charge and the case in general with your lawyer?

3              THE DEFENDANT:  I have, Your Honor.

4              THE COURT:  Are you completely satisfied with the

5    services of your lawyer in this case?

6              THE DEFENDANT:  I am, Your Honor.

7              THE COURT:  Have you had enough time to talk with him

8    and to discuss the case and discuss the plea offer and whether

9    or not you should accept it?

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  And, Mr. DiLorenzo, I have a question for

12   you, which is:  Has the government produced any exculpatory

13   information in its possession to the defendant?

14             MR. DiLORENZO:  There's no exculpatory information in

15   our possession that has not been turned over.

16             THE COURT:  All right.  Now, Mr. Patten, you have

17   certain rights in a criminal case and I want to go over each of

18   them with you.  First of all, you're pleading guilty to what's

19   called an information, which is basically a piece of paper

20   where the government typed up the charges against you.  But do

21   you understand that because you're pleading guilty to a felony,

22   you have the right to have that evidence presented to a grand

23   jury and have the grand jury vote on whether there's probable

24   cause to believe that you committed that offense and to be

25   charged with an indictment, and that by pleading to an

1    information, you're giving up the right to be charged by a

2    grand jury and in an indictment.  Do you understand that?

3              THE DEFENDANT:  I do, Your Honor.

4              THE COURT:  I have a document in front of me that

5    says Waiver of Indictment, with a squiggle over where it says

6    Defendant, and so you are you the one who signed this form this

7    morning?

8              THE DEFENDANT:  I am, Your Honor.

9              THE COURT:  Okay.  You also have the right to have a

10   jury trial in this case, and that means 12 citizens from the

11   District of Columbia would be selected and they would sit there

12   in that jury box and they would be the ones who decide your

13   guilt or innocence based upon evidence presented in the

14   courtroom.  Do you understand that you have a right to a jury

15   trial?

16             THE DEFENDANT:  I do, Your Honor.

17             THE COURT:  And do you understand that if you had a

18   trial, you would have the right to be represented by your

19   lawyer at that trial?

20             THE DEFENDANT:  I do, Your Honor.

21             THE COURT:  And do you understand that if you had a

22   trial, you would have the right, through your lawyer, to

23   confront and cross-examine the witnesses against you?

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  And do you also understand that you would

1     have the right to present your own witnesses, and the right to

2     subpoena them, to compel them to be here to testify in your

3     defense?

4           THE DEFENDANT:  Yes, Your Honor.

5           THE COURT:  And do you understand that if there were

6     a trial, you would have the right to testify and to present

7     evidence on your behalf if you wanted to, but you wouldn't have

8     to testify or present any evidence if you didn't want to

9     because you can't be forced to incriminate yourself or present

10    evidence in your own case.  Do you understand that?

11          THE DEFENDANT:  I do, Your Honor.

12          THE COURT:  And do you also understand that unless

13    and until I accept your guilty plea, you are presumed by the

14    law to be innocent because it is the government's burden to

15    prove your guilt beyond a reasonable doubt and until it does,

16    you can't be convicted of a crime?

17          THE DEFENDANT:  I do, Your Honor.

18          THE COURT:  So understanding that if you plead guilty

19    in this case and I accept your plea, you're going to give up

20    all the rights I just explained because there won't be a trial,

21    do you still want to enter a guilty plea?

22          THE DEFENDANT:  I do, Your Honor.

23          THE COURT:  All right.  And I have a document here

24    entitled Waiver of Trial by Jury.  And did you sign this and

25    put it all in writing this morning?

1          THE DEFENDANT:  I did, Your Honor.

2          THE COURT:  All right.  Now, do you also understand

3     that if you went to trial and you were convicted, you would

4     have a right to appeal your conviction to the Court of Appeals

5     and to have a lawyer help you with that appeal?

6          THE DEFENDANT:  I do, Your Honor.

7          THE COURT:  And so do you understand that by pleading

8     guilty you're agreeing to give up your right to appeal; you

9     won't be able to appeal the fact that -- even if this statute

10    is unconstitutional or that your conduct doesn't fall into the

11    statute, and you won't be able to appeal your sentence either,

12    unless if exceeds the statutory maximum, or, if we determine

13    that there is a guideline range, if I sentence you to greater

14    than what the guideline range is, or if your lawyer is somehow

15    ineffective in connection with that sentencing?

16          THE DEFENDANT:  I understand, Your Honor.

17          THE COURT:  And do you also understand that you won't

18    be able to come back and challenge this case under the Federal

19    Rules of Civil Procedure or 28 U.S. code § 2255 that allow you

20    to come back to court and attack your conviction on some legal

21    basis?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  Okay.  With the limited exception, again,

24    of if your lawyer is ineffective or if there's newly discovered

25    evidence, but otherwise you can't come back and complain about

1      some legal infirmity in your conviction.  Do you understand

2      that?

3                  THE DEFENDANT:  I understand.

4                  THE COURT:  Okay.  And do you still want to plead

5      guilty in this case and give up your right to a trial and your

6      right to appeal and all the other rights I've explained that

7      you'd have if your case went to trial?

8                  THE DEFENDANT:  Yes, Your Honor.

9                  THE COURT:  Okay.  So at this point I'm going to ask

10     the prosecutor to explain to me and to you generally what

11     happened in this case.  I understand that we have a written

12     statement of offense, but I always require the lawyers to talk

13     about it in court, and for you to listen.  And when you're

14     done, I'm going -- when he's done I'm going to ask you if what

15     the prosecutor has just told me is fair and accurate.

16                  Thank you.  You can be seated.

17                  MR. DiLORENZO:  Thank you, Your Honor.  And as the

18     Court pointed out, the government submitted a statement of

19     offense which provides a more fulsome account of the conduct,

20     it was signed by the government, defense counsel, and the

21     defendant.

22                  But, had this matter gone to trial, some of the

23     evidence that the government would have introduced would have

24     been the following:

25                  The government's evidence would have shown that

1    beginning in or about -- in or around 2014 to the present, W.

2    Samuel Patten worked with a Russian national -- who hereinafter

3    will be referred to as Foreigner A -- on lobbying and political

4    consulting services.  The two of them formed a company which is

5    referred to in the statement of offense as Company A.  And they

6    formed the company in the United States, they were 50/50

7    partners.

8              Beginning in or around 2015 Company A, among other

9    things, advised the Opposition Bloc, which was a Ukrainian

10   political party, and members of that party, including a

11   prominent Ukraine oligarch, who is referred to as Foreigner B.

12             Company A performed political consulting services

13   which involved work within the Ukraine, as well as lobbing in

14   the United States.  As part of Company A's work, Patten

15   traveled to Ukraine on numerous occasions and met with

16   Foreigner A and B and other foreigners.

17             For this work Foreigner B caused payments to be made

18   to Company A through an offshore Cypriote account from in or

19   around the spring of 2015 through in or around 2017.  Company A

20   received over $1 million for its work for Opposition Bloc and

21   other Ukraine consulting work, a portion of which was received

22   as a result of conduct which violated a Foreign Agents

23   Registration Act.

24             As part of his work for Company A Patten violated the

25   Foreign Agents Registration Act by contacting members of the

1    United States legislative and executive branches, as well as

2    the media.  Such communication included efforts to set up

3    meetings between Foreigner A and B with members of Congress and

4    staff, without disclosing that he was an agent of the

5    Opposition Bloc.

6         Patten also drafted talking points for Foreigner B

7    for his meetings on Capitol Hill, as well as talking points for

8    congressional staffers to use to convince other congressional

9    members and staff members to meet with Foreigner B.  The

10   activities undertaken -- the activity was undertaken to promote

11   the interests of Foreigner B and influence United States

12   policy.

13        In addition, during this time period Patten and

14   Foreigner A assisted Foreigner B in drafting periodic articles,

15   or op-eds, targeted at United States press without disclosing

16   he was an agent of the Opposition Bloc.

17        Additionally, government's evidence would have shown

18   specifically that Patten, in coordination with Foreigner A,

19   worked on setting up meetings in Washington, D.C. from on or

20   around January 19th, 2015 to on or around January 21st, 2015

21   between Foreigner B and members of Congress and -- and a member

22   of Congress and their staff.  Specifically, Senators -- A,

23   senators on the Foreign Relations Committee and representatives

24   on the House Committee on Foreign Affairs; B, the executive

25   branch, including officials from the U.S. Department of State,

1    and; C, various members of the United States media.

2              Government's evidence would also have shown that

3    Patten drafted and provided staffers with points of discussion

4    concerning Foreigner B and his message with respect to Ukraine.

5              As another example, in around May 2016 Patten and

6    Foreigner A wrote a letter for Foreigner B to use in lobbing a

7    high-ranking member of the Department of State regarding recent

8    developments on the Ukrainian Central Election Commission and

9    requested the official's engagement on the issue.  Again,

10   Patten did not disclose to the Department of State

11   representatives or the Department of Justice that he was

12   working as an agent for the Opposition Bloc.  Patten and also

13   drafted op-ed pieces on behalf of Foreigner B and then placed

14   them with the United States media.

15             For instance, in or around January of 2017 he and

16   Foreigner A drafted an op-ed article on behalf of Foreigner B

17   to address concerns regarding Ukraine's ability to work

18   effectively with the new United States administration.  Patten

19   then attempted to get the op-ed article placed with various

20   U.S. media outlets.  In around February of 2017 he successfully

21   got the op-ed article published in a national United States

22   media outlet.  Prior to the publication of the op-ed he

23   facilitated Foreigner B's signing the required U.S. media

24   outlet's license agreement.

25             And then, finally, Patten knew at the time that he

1    took all of the actions described -- the government's evidence

2    would have shown this -- that he knew at the time he took all

3    the actions described that the Foreign Agents Registration Act

4    required him to register in order to engage legally in such

5    activities for a foreign principal.

6          Patten had previously filed under the Foreign Agents

7    Registration Act for another client.  Patten and Foreigner A

8    had also inquired of Foreigner B whether the Company A could

9    file under the Foreign Agents Registration Act.  Foreigner B

10   said, in substance, that it did not want them to register now,

11   but they could eventually do so at an unspecified future date.

12   As a result, Patten and Foreigner A never filed, timely or not,

13   and continued to work and represent the Opposition Bloc and

14   members of that party, including Foreigner B.

15          Your Honor, that would have been some of the evidence

16   that would support the conviction.  We have additional facts in

17   the statement of facts.

18          THE COURT:  All right.  Thank you.

19          Mr. Sears, you and Mr. Patten can come back.

20          All right.  Mr. Patten, is what the prosecutor just

21   told me a true and accurate description of what you did in this

22   case?

23          THE DEFENDANT:  It is, Your Honor.

24          THE COURT:  And so did you in fact act as an agent of

25   a foreign principal, B, in the Opposition Bloc without

1    registering with the Attorney General?

2              THE DEFENDANT:  I did, Your Honor.

3              THE COURT:  And, now, there is a written statement of

4    the offense, which I take it you and your lawyer have gone over

5    carefully?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  Are you the one who, again, signed it on

8    the last page, where it says, Defendant's Acceptance,

9    indicating that it was true?

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  All right.  And I also ask that people

12   not just sign the last page, but go through every page and

13   initial it and date it to tell me I've actually read every

14   single page of this and every single page of this is true.  So

15   are you the one who wrote "WSP" and the date on every page of

16   the statement of offense?

17             THE DEFENDANT:  I am, Your Honor.

18             THE COURT:  Now, I have one more document in front of

19   me, and it's even longer than the first one, and it is the

20   letter from the prosecutor to your lawyer setting out the terms

21   of the plea agreement.  Have you read this letter over and

22   discussed it with your lawyer?

23             THE DEFENDANT:  I have, Your Honor.

24             THE COURT:  And is this your signature on the last

25   page, accepting this plea offer?

1              THE DEFENDANT:  It is, Your Honor.

2              THE COURT:  And have you also initialed and dated

3    every page, letting me know that you've read every page of this

4    agreement?

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  I'm not going to go through every word of

7    it, but I want to go through the key provisions in it with you.

8    As I understand it, you're agreeing to plead guilty to the

9    offense of acting as an agent of a foreign principal without

10   registering with the Attorney General of the United States,

11   which violates the Foreign Agent Registration Act, 22 U.S. Code

12   § 612 and 618(a)(1).  Do you understand that if I accept your

13   guilty plea in this case, you could receive a maximum sentence

14   of up to five years incarceration for that offense?

15             THE DEFENDANT:  I do, Your Honor.

16             THE COURT:  And, in addition, you could receive a

17   sentence, if you are incarcerated, that includes a term of

18   supervised release after you're done of up to three years?

19             THE DEFENDANT:  I do, Your Honor.

20             THE COURT:  And that means that if you're sent to

21   prison, then on your release you'll be under court supervision

22   under certain conditions, and if you violate those conditions,

23   you could be sent back to prison for an additional period of

24   time.  Do you understand that?

25             THE DEFENDANT:  I understand, Your Honor.

1          THE COURT:  And do you understand also that this is

2     an offense for which you could be ordered to pay a fine, which

3     could be up to $250,000?

4          THE DEFENDANT:  I understand, Your Honor.

5          THE COURT:  And, also, that if you don't pay your

6     fine on time, there could be penalties and interest that accrue

7     as well.  Do you understand that?

8          THE DEFENDANT:  I do, Your Honor.

9          THE COURT:  And this is a felony offense, so do you

10    understand that you have to pay a special assessment into the

11    Court of $100?

12         THE DEFENDANT:  I'm prepared to do so, Your Honor.

13         THE COURT:  Okay.  And I take it there's no

14    forfeiture order in connection with this case, is that correct?

15         MR. SEARS:  No, Your Honor.

16         THE COURT:  Okay.  Now, I'm not going to sentence you

17    today.  In deciding on a fair and appropriate sentence I have

18    to consider a number of factors, they're set in a statute, 18

19    U.S. Code § 3553(a) and they include the nature and

20    circumstance of the offense, your history and characteristics,

21    and the need for the sentence to fulfil a number of purposes,

22    such as punishing you, deterring others, protecting the

23    community.  And there's the requirement that I impose a

24    sentence that's consistent with sentences imposed in similar

25    cases.

1          As part of that calculation, one of the factors I

2     have to consider in every case is what the U.S. Sentencing

3     Guidelines would recommend.  Congress has created a Sentencing

4     Commission and it has established a series of guidelines that

5     have recommended sentencing ranges for each offense.  And those

6     ranges can go up or down depending on the circumstances; if

7     they're more aggravated, if a weapon was involved, or if

8     there's mitigating circumstances.  But ultimately you go

9     through the entire calculus and then you have an offense level

10    and then you look at the defendant's criminal history and that

11    can send the sentence up or down as well.

12         Have you and your lawyers talked about the sentencing

13    guidelines and how they might apply in your case?

14         THE DEFENDANT:  We have, Your Honor.

15         THE COURT:  All right.  Now, as I understand it, both

16    the government and your lawyer are of the point of view that

17    while the -- the guidelines has nothing in it about the Foreign

18    Agent Registration Act, first of all.  And what the guidelines

19    say is in that situation, you apply the most analogous

20    guideline.  But both you, your lawyer, and the government agree

21    that there is no analogous guideline in the guidelines, is that

22    correct?

23         THE DEFENDANT:  I understand that.

24         THE COURT:  Okay.  But you also understand that the

25    probation office, when it writes its presentence report, could

1    disagree with that conclusion and think that there is a

2    guideline that's pretty close or should apply.

3              THE DEFENDANT:  I understand, Your Honor.

4              THE COURT:  And I also could come to that conclusion

5    once I've dug into the matter further.

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  But at this time, there's no agreement

8    between the government and you as to what guideline range would

9    apply because you're both in agreement that there is no

10   guideline range that would apply and I'm just supposed to apply

11   the statute that I must apply in every case anyway; is that

12   correct?

13             THE DEFENDANT:  That is my understanding.

14             THE COURT:  All right.  Because that's a little

15   complicated, but I don't usually have to go into all that.

16             But, it's also the case that if there is a guideline

17   that gives me a base offense level, you're agreed that it would

18   be reduced for your acceptance of responsibility, either two

19   levels or three, depending on where we're starting with the

20   guidelines.  So do you understand that?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  Okay.  Now, do you understand I'm not

23   going to be able to determine whether there is a guideline

24   range that applies to your case until the presentence report

25   has been completed and your lawyer has had a chance to look at

1    it and you've had a chance to look at it and the government has

2    had a chance to look at it and everybody has had the

3    opportunity to object to it and that process is complete?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  Okay.  And do you also understand that if

6    the guidelines do apply, that I have the authority to impose a

7    sentence that's either more severe or less severe than what the

8    guidelines would recommend?

9              THE DEFENDANT:  Yes, Your Honor.

10             THE COURT:  Now, do you also understand that in this

11   case, as part of your plea agreement, there is a paragraph that

12   requires you to cooperate fully and truthfully in this case?

13             THE DEFENDANT:  Yes, Your Honor.

14             THE COURT:  And do you also understand that the

15   government has agreed to bring the nature and extent of your

16   cooperation to my attention at the time of sentencing?

17             THE DEFENDANT:  That is my understanding, Your Honor.

18             THE COURT:  Okay.  And do you also understand that if

19   we do apply the guidelines in this case, the government has

20   agreed to consider filing a motion, asking me to depart

21   downward in the guidelines based upon assistance you've

22   provided to the government.  But that's their decision and

23   their decision only as to whether they're going to do that

24   ultimately and neither you nor I can force them to file that

25   motion.  Do you understand that?

1    THE DEFENDANT:  Yes, Your Honor.

2    THE COURT:  Okay.  And so I'm the one that's going to

3  make the final decision on whether there should be a departure

4  on that ground.

5    THE DEFENDANT:  Yes.

6    THE COURT:  Do you also understand that under some

7  circumstances -- and we talked about the limited ones -- if I

8  apply the guidelines incorrectly or if I exceed the statutory

9  maximum, that you or the government could appeal the sentence?

10    THE DEFENDANT:  Yes, Your Honor.

11    THE COURT:  Now, do you also understand that parole

12  has been abolished for federal offenses, so if you are

13  sentenced to prison in this case, you're going to serve the

14  sentence I impose, with the possible reduction for good time of

15  up to 54 days a year?

16    THE DEFENDANT:  Yes, Your Honor.

17    THE COURT:  Now, you're pleading guilty to a felony,

18  so do you understand that that plea, if it's accepted and

19  you're found guilty, could result in the depravation of certain

20  valuable civil rights, such as the right to vote, the right to

21  hold public office, the right to serve on a jury, and the right

22  to possess any kind of firearm?

23    THE DEFENDANT:  I do, Your Honor.

24    THE COURT:  All right.  And do you also understand

25  that at this point, since there's no recommendation as to what

1    the sentence is supposed to be, if the sentence turns out to be

2    more severe than what you are expecting or hoping for, you're

3    still bound by your plea and you don't have the right to

4    withdraw it for that reason?

5              THE DEFENDANT:  I understand that, Your Honor.

6              THE COURT:  Mr. Patten, has anyone, including your

7    attorney, the prosecutor, or any other person you've come in

8    contact with in connection with this investigation promised you

9    or suggested that just because you're pleading guilty, I will

10   give you a lighter sentence?

11             THE DEFENDANT:  No, Your Honor.

12             THE COURT:  Has anyone forced you or threatened you

13   or coerced you in any way into entering this plea of guilty?

14             THE DEFENDANT:  No, Your Honor.

15             THE COURT:  All right.  Now, we've talked about this

16   letter which sets out the agreement between the government and

17   your lawyer in this case.  Has anybody made any promises to you

18   about your guilty plea that aren't written down in this letter?

19             THE DEFENDANT:  No, Your Honor.

20             THE COURT:  Has anybody promised you what sentence

21   I'm going to impose in this case?

22             THE DEFENDANT:  No, Your Honor.

23             THE COURT:  And do you understand at this point even

24   I don't know what sentence I'm going to impose in this case

25   because I haven't heard from the probation officer, from your

1 lawyer, or from the government's lawyer?

2    THE DEFENDANT:  I understand, Your Honor.

3    THE COURT:  All right.  And do you understand that

4 even though the prosecutor is not asking that you be

5 incarcerated pending your sentence in this case, that decision

6 is also up to me and I'm the one who's going to decide whether

7 you get released between now and your sentencing date?

8    THE DEFENDANT:  I understand that, Your Honor.

9    THE COURT:  Are you entering this plea of guilty

10 voluntarily and of your own free will, because you are guilty

11 and for no other reason?

12    THE DEFENDANT:  I am, Your Honor.

13    THE COURT:  Is there anything you don't understand

14 about this proceeding or about your plea in this case?

15    THE DEFENDANT:  No, Your Honor.

16    THE COURT:  Is there anything you want to ask me or

17 ask your lawyer before I ask you for your final decision in

18 this case?

19    THE DEFENDANT:  No, Your Honor.

20    THE COURT:  Are you ready now to make a decision

21 about whether you want to enter a plea of guilty or whether you

22 want to have a trial?

23    THE DEFENDANT:  Yes, Your Honor.

24    THE COURT:  And what's your decision?

25    THE DEFENDANT:  I would -- I plead guilty to the

1    charge.

2              THE COURT:  I'm satisfied that this defendant is

3    fully competent and capable of making a decision today, that he

4    understands the nature and consequences of what he is doing.

5    The transcript won't reflect it, but he has actually nodded his

6    head with every "yes," with every question I have asked him

7    today.  I find that he's acting voluntarily and of his own free

8    will and that there is an adequate factual basis for the plea

9    and, therefore, I will accept the plea.

10             I also, having read the Pretrial Services Agency

11   report and understand the position of the government and the

12   defense here, I'm not going to detain you between now and your

13   trial, but I'm going to permit you to remain on your personal

14   recognizance with certain conditions.  But I would like to --

15   can I just talk to the parties at the bench briefly about

16   conditions?

17             (Bench discussion:)

18             THE COURT:  The Pretrial Services report mentions a

19   history of some alcohol use, and the defendant has talked about

20   issues of depression in the past.  Both of those things are

21   going to be stressed to the max by the publicity at this point,

22   beginning this afternoon.  And, therefore, I think it would be

23   prudent to make a condition of his release that he continue to

24   see the therapist that he's seeing and that he avoid the use of

25   alcohol.

1              MR. DiLORENZO:  Also follow all directions from

2      pretrial.

3              THE COURT:  I'm going to make those conditions, but I

4      want to make sure that that's okay with everybody here.

5              MR. DiLORENZO:  That's fine.

6              MR. SEARS:  Are you going to do it in open court,

7      though?

8              THE COURT:  The court reporter has already informed

9      me that there's multiple requests for this transcript, so I'm

10     just going to say that much.  And we can seal this portion of

11     this conversation if you insist, but I don't think, now that

12     he's already said in open court that he's receiving that

13     treatment, that that's --

14             MR. SEARS:  Understood.

15             THE COURT:  -- all we have.

16             All right.  I'm going to keep it all open.

17             (Open court:)

18             THE COURT:  All right.  Mr. Patten, I find that you

19     are not likely to flee or to pose a danger to the community

20     and, therefore, as I said, I'm going to release you on your

21     personal recognizance, with the following conditions:

22             You do need to provide any passports you have to the

23     Pretrial Services Agency and not apply for any others or

24     possess any others.  You need to report by phone weekly to the

25     Pretrial Services Agency.  If you wish to travel outside the

1    District of Columbia or outside the United States, you need to

2    obtain the Court's permission.

3              Where does he reside?

4              MR. SEARS:  Your Honor, he resides in the District.

5    My understanding of the recommendation from Pretrial Services,

6    that Court approval would only be required for overseas travel.

7    Within the United States could be approved by probation.  I

8    don't anticipate him going anywhere, certainly not overseas

9    without a passport, so I don't anticipate that being a issue,

10   but --

11             THE COURT:  Well, does he travel frequently in

12   connection with his work?  Or where does he go?

13             THE DEFENDANT:  The greater DMV area, Your Honor.

14             MR. SEARS:  Maybe Northern Virginia.

15             THE COURT:  All right.  Within the greater Washington

16   metropolitan area you don't have to seek the Court's

17   permission.  But if you want to go to California or Maine or

18   Florida, I do want to be notified.

19             THE DEFENDANT:  Understood, Your Honor.

20             MR. SEARS:  Understood.

21             THE COURT:  All right.  I'm going to require, as a

22   condition of your release, that you continue to see on whatever

23   schedule you're already seeing the therapist that you're

24   seeing, and that you avoid alcohol.

25             THE DEFENDANT:  Yes, Your Honor.

1        THE COURT:  There's also a booking order that's been

2    provided to me to sign.  Are you going to take care of that

3    immediately after this proceeding?  I think you have to check

4    in with pretrial and then -- Mr. DiLorenzo, yes?

5        MR. DiLORENZO:  We'll arrange a booking order, Your

6    Honor; get it signed.  We can take care of that.

7        THE COURT:  All right.  Well, I'm signing the order.

8    So you understand that that's part of the requirement of what

9    you have to do.  And you can work out the timing with the

10   prosecutor.

11       MR. SEARS:  Understood, Your Honor.

12       THE COURT:  Is there anything further I need to take

13   up right now on behalf of the defendant?

14       MR. SEARS:  No, Your Honor.

15       THE COURT:  Okay.  Anything further on behalf of --

16       MR. DiLORENZO:  No, Your Honor, not for the

17   government.

18       THE COURT:  Okay.  And we have to wait for them to

19   sign the form.  All right.

20       (Pause.)

21       THE COURT:  All right.  You can all be seated until

22   she brings you the form to sign.

23       Yes?

24       MR.DiLORENZO:  Actually, one matter.  Can we set this

25   matter for --

1          THE COURT:  Can you get closer to the microphone?

2          We have not done the next step.  Are you asking to

3    set a sentencing date or are you asking to set a date to file a

4    status report?

5          MR. DiLORENZO:  We're asking to set a status.  And we

6    would recommend or suggest about 60 days.

7          THE COURT:  Okay.  I think we can just do a status

8    report in 60 days and then based on that report, if you're

9    requesting that we come into court, we can do that.

10          MR. DiLORENZO:  That works.

11          THE COURT:  And so 60 days from now would be the end

12    of October.  I want a joint status report on -- let's say

13    October 31st.

14          All right.  Okay.  So, you all need to remain in the

15    courtroom until he's had the opportunity to sign the form.  But

16    I think, otherwise, we can adjourn, Mr. Haley?

17          THE COURTROOM DEPUTY:  With the exception of you

18    signing.

19          THE COURT:  Oh, I have to sign it.  Well, then we're

20    not going anywhere.  It's been a long one.  Okay.

21          THE PROBATION OFFICER:  I just want to be clear on

22    the travel point.

23          THE COURTROOM DEPUTY:  She wants to make sure she's

24    clear with what the travel part is.

25          (Pause.)

1          THE COURTROOM DEPUTY:  Mr. Patten, please rise and

2     raise your right hand.  Do you solemnly affirm and truly

3     declare that you will follow the conditions of your release as

4     set forth by the Court, and you will do so under the pain and

5     penalties of perjury?

6          THE DEFENDANT:  I do.

7          THE COURTROOM DEPUTY:  We're done.  We're good.

8          THE COURT:  All right.  Thank you.

9                         *   *   *

CERTIFICATE OF OFFICIAL COURT REPORTER

        I, JANICE DICKMAN, do hereby certify that the above
and foregoing constitutes a true and accurate transcript of my
stenograph notes and is a full, true and complete transcript of
the proceedings to the best of my ability.

                        Dated this 31st day of August, 2018.


                        /s/_____

                        Janice E. Dickman, CRR, RMR
                        Official Court Reporter
                        Room 6523
                        333 Constitution Avenue NW
                        Washington, D.C. 20001