**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | **Criminal No.:  18-260 (ABJ)** |
| **v.** : | |
| : | **Sentencing:  April 12, 2019** |
| **W. SAMUEL PATTEN,** : | |
| : | |
| **Defendant.** : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**
**AND MOTION FOR A DOWNWARD DEPARTURE**

The United States of America, by and through undersigned counsel, submits this memorandum in aid of sentencing. On August 31, 2018, Defendant W. Samuel Patten pleaded guilty to one count of knowingly and willfully acting as an agent of a foreign principal without registering with the Attorney General, in violation of the Foreign Agents Registration Act ("FARA"), 22 U.S.C. §§ 612 and 618(a)(1). For this criminal violation, Patten faces a maximum sentence of 5 year's imprisonment, a fine of not more than $250,000, and a term of supervised release of not more than 3 years.

There is no sentencing guideline applicable to FARA violations, nor is there any analogous sentencing guideline under these specific circumstances. *See* Plea Agreement, *United States v. Patten*, No. 18-cr-260 (D.D.C. Aug. 31, 2018) (ECF No. 6 at 2); Presentence Investigation Report ("PSIR"), *United States v. Patten*, No. 18-cr-260 (D.D.C. Apr. 4, 2019) (ECF No. 35 at 6). Therefore, the factors set forth in 18 U.S.C. § 3553 should control Defendant's sentence. *See* United States Sentencing Guidelines ("U.S.S.G.") § 2X5.1. While there is no advisory guideline sentence in this instance, in accordance with the Plea Agreement (ECF No. 6 at 6), the government concurrently moves for a downward departure pursuant to U.S.S.G. 5K1.1 because of Patten's

cooperation and the substantial assistance he has provided to the government. *See* Sealed Addendum to this Memorandum in Aid of Sentencing.

This case was originally investigated by the Special Counsel's Office before being referred to the U.S. Attorney's Office. Consistent with the practice of the Special Counsel's Office, the government does not take a position with respect to a particular sentence to be imposed. Instead, the government sets forth below its assessment of the relevant Section 3553 sentencing factors, including the serious nature of the underlying offense, the characteristics of the defendant (including his substantial assistance), and sentences received by similarly situated defendants.

## I.      Analysis of Specific Statutory Factors Under 18 U.S.C. § 3553(a)

When weighing the § 3553(a) factors, the Court should consider not only the nature and circumstances of the offense and the history and characteristics of the defendant, but also the applicable sentencing objectives—that is, that the sentence: (1) reflect the seriousness of the offense; (2) promote respect for the law; (3) provide just punishment; (4) afford adequate deterrence; (5) protect the public; and (6) effectively provide the defendant with needed educational or vocational training and medical care. *See* 18 U.S.C. § 3553(a)(1), (2). In addition, the sentence should reflect "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

### a.      Nature and Circumstances of the Offense and Other Admitted Conduct

The defendant's offense is serious, and includes multiple violations of law. As described more fully below, the defendant violated FARA, facilitated and concealed a foreign donation to the Presidential inauguration, and provided false testimony to and withheld documents from the United States Senate Select Committee on Intelligence ("SSCI"). *See* Statement of Offense, *United States v. Patten*, No. 18-cr-260 (D.D.C. Aug. 31, 2018) (ECF No. 7) ("SOF").

FARA plays a fundamental role in our democracy. The purpose of FARA is "to protect the national defense, internal security, and foreign relations of the United States by requiring public disclosure by persons engaging in propaganda activities and other activities for or on behalf of foreign governments, foreign political parties, and other foreign principals so that the Government and the people of the United States may be informed of the identity of such persons and may appraise their statements and actions in the light of their associations and activities." 22 U.S.C. § 611, note on Policy and Purpose, 56 Stat. 248-49 (1942). As this Court succinctly put it recently, "If the people don't have the facts, democracy can't work." *See* Transcript of Sentencing, *United States v. Manafort*, No. 17-cr-201 (D.D.C. Mar. 19, 2019) (ECF No. 554) at 63:19-20. In short, FARA protects the integrity of the American political system by enabling Americans to consider the identity of foreign persons behind certain speech and activities as they evaluate the substance of that speech and activity.

The specific circumstances of Patten's offense go to the heart of these concerns. As described in the SOF, the defendant worked for approximately four years to advance the interests of a Ukrainian political party—the Opposition Bloc—before the United States Congress and in the American media.[1] SOF at ¶ 1. The defendant performed these services through a U.S. company that Pattern formed with a Russian national, and that received over $1,000,000 for its work, in part through offshore bank accounts. *Id.* Patten's services for the Opposition Bloc included communicating with members and staff of Congress and the Executive Branch to set up meetings with various foreign nationals. *Id.* at ¶ 2. Patten also drafted talking points for the foreign principal to use in meetings he had set up, as well as talking points for Congressional staff to use with other

---

[1]     The Opposition Bloc, and its previous iteration—the Party of Regions—is the same Ukrainian political party for which Paul Manafort also worked.

members and staff in an effort to arrange even more meetings. *Id.* Patten's media outreach included drafting op-ed pieces on behalf of a Ukrainian national associated with the Opposition Bloc and getting those pieces placed in American media outlets. *Id.* ¶ 4.

In none of these instances did Patten identify that he was working on behalf of the Opposition Bloc, as required under FARA. He did not discuss that fact with the Congressional members or staffers or the members of the Executive Branch. Nor did he make that disclosure on the op-ed pieces he drafted, as also required under FARA. Without those disclosures, U.S. government officials and the American public could not effectively evaluate his representations.

Patten engaged in all of this activity knowing that he was required to register under FARA. The defendant had previously registered with the Department of Justice's FARA Unit on behalf of a different client, and he even inquired of the Ukrainian national whether he and his company should file for the conduct described. *Id.* ¶ 5.

Patten also admitted to other conduct for which he was not charged and that was related to his work for the Opposition Bloc. Patten facilitated the purchase of $50,000 worth of tickets to events associated with the Presidential inauguration in January 2017. *Id.* ¶ 6-7. Patten used a straw purchaser to buy the tickets in order to conceal the fact that the money was provided by the Ukrainian national to Patten's company through an offshore bank account. *Id.* ¶ 7. Patten caused the payment knowing that there was a restriction on foreign donations to the inauguration. *Id.* ¶ 6.

In January 2018, Patten gave voluntary testimony to the SSCI on topics that included his representation of foreign principals in the United States and his actions in connection with inaugural events. *Id.* ¶ 8-9. Patten intentionally withheld documents from SSCI relating to his concealment of the foreign payment for inauguration tickets and also gave false and misleading testimony that obscured his role in the purchase, as well as his FARA violations. *Id.* ¶ 9.

b.        **History and Characteristics of the Defendant**

Patten's history and characteristics present a number of mitigating factors to be considered by the Court in determining his sentence.

Patten is 47 years old, married, and has a son from a previous marriage. PSIR at 2, 8. He graduated from Georgetown University in 1993, with a Bachelors of Arts degree in American Government. *Id.* at 12.  Until the pendency of this investigation and ultimate prosecution, Patten has been regularly employed in a variety of professional jobs. *Id.* at 12-14. Among other things, he has worked as a newspaper reporter, as a foreign policy and defense advisor for a member of Congress, as an assistant to a presidential campaign, and as a senior advisor at the U.S. Department of State. *Id.* Patten has also worked for non-governmental organizations ("NGOs") that promote human rights and democracy abroad, often times placing him in dangerous locations overseas. *Id.* at 13-14. In short, in addition to various periods of self-employment as a political consultant, Patten has a long record of public service, including employment with both the executive and legislative branches of the U.S. government as well as employment with NGOs. *Id.* Prior to engaging in the criminal conduct identified above on behalf of the Opposition Bloc, and his subsequent efforts to conceal that conduct, Patten appears to have a led a helpful and exemplary professional life.

Currently, while unemployed, Patten has used some of his free time to volunteer with a local nonprofit organization that focuses on helping children succeed in school by providing tutoring, workshops designed to teach necessary skills to successfully navigate middle-school and high-school and graduate on time, and with outdoor recreation opportunities. PSIR at 11.  It is also evident from reviewing the Presentence Report that Patten has the full support of his wife and family, and that he has effectively used the time that he has been unemployed to seek help for and address a number of personal issues that he has struggled with throughout his life. *Id.* at 10-12.

With regards to his conduct during the pendency of this investigation and prosecution, Patten began cooperating with the Special Counsel's Office shortly after being contacted by investigators, and well before his guilty plea. Likewise, Patten deserves credit for accepting responsibility and pleading guilty to a criminal information prior to indictment. Moreover, Patten admitted to all of his criminal conduct, which was included in the Statement of Offense as part of his guilty plea.

In addition, Patten provided substantial assistance to the government, and therefore the government is contemporaneously moving for a downward departure pursuant to Section 5K1.1 of the Guidelines. Specifically, Patten was a potential witness in the case of *United States v. Manafort*, No. 17-cr-201 (ABJ), and he was willing and able to testify about Paul Manafort's work in Ukraine for the Opposition Bloc and related matters. To prepare for his anticipated testimony, Patten met with prosecutors before trial and he provided documentary evidence supporting his expected testimony. Ultimately, because Manafort pled guilty in that case, Patten's testimony was not needed. In addition, due to his prior work and experience as a political consultant overseas, Patten has served as a valuable resource for the government in a number of other criminal investigations, providing helpful information about additional individuals and entities. In total, Patten has met with government investigators, in person or by phone, a total of nine separate times to answer numerous questions and explain various documents. In all of these sessions, Patten has been honest and straightforward with government investigators. The government will also file an Addendum to this Memorandum in Aid of Sentencing, where the government more fully describes the nature of Patten's cooperation and assistance to the government.[2]

---

[2] Because the Addendum includes sensitive information about other investigations and persons who have not been (and may not be) charged with a crime, the government is seeking permission from the Court to file the Addendum under seal.

6

As calculated by the United States Probation Office, the defendant has a criminal history score of zero and no prior contacts with the criminal justice system. PSIR at 7. In addition, since his guilty plea on August 31, 2018, Patten has been on release on his personal recognizance, and he has complied with all of his release conditions, with the exception of missing a phone call check-in on February 4, 2019, for which he received an oral warning. *Id.* at 3.

**c.      The Need to Avoid Unwarranted Sentence Disparities**

Although there have only been a handful of FARA criminal convictions over the last twenty years, many of those convictions have resulted in terms of imprisonment.[3] The most recent such cases include:

- *U.S. v. Paul J. Manafort, Jr.* (D.D.C.) – In 2018, Manafort pleaded guilty to, among other things, conspiracy to commit multiple offenses, including violating FARA by failing to register and by providing false statements in a document filed with FARA. Manafort failed to register under FARA as an agent of the government of Ukraine, the Ukrainian Party of Regions, and former Ukrainian President Yanukovych. Manafort was sentenced to the statutory maximum **60 months** for the conspiracy to violate FARA.

- *U.S. v. Prince Asiel Ben Israel* (N.D. Ill.) – In 2014, Ben Israel pleaded guilty to failure to register under FARA as an agent for a foreign government; namely, lobbying on behalf of Zimbabwe for lifting sanctions on Robert Mugabe and other top Zimbabwean government officials. Ben Israel was sentenced to **seven months** in prison.

- *U.S. v. Mark Deli Siljander* (W.D. Mo.) – In 2010, former U.S. Representative Siljander pleaded guilty to obstruction of justice and acting as an agent of a foreign principal without registering under FARA, relating to his work for the Islamic American Relief Agency, an Islamic charity with ties to international terrorism. Siljander was sentenced to **one year and one day** in federal prison without parole. Siljander's co-defendant, El-Siddig, received a **probationary sentence** for conspiring to violate FARA.

---

[3]      Other cases prosecuted by the Special Counsel's Office for making false statements— which is one of the categories of other criminal conduct to which Patten admitted—resulted in sentences that included brief terms of incarceration. *See United States v. Papadopoulos*, 17-cr-182 (D.D.C. Sept. 7, 2018) (14 days); *United States v. van der Zwaan*, 18-cr-31 (ABJ) (D.D.C. Apr. 3, 2018) (30 days).

- *U.S. v. Tongsun Park* (S.D.N.Y.) – In 2007, Park was convicted at trial for conspiracy to violate FARA, 18 U.S.C. § 951, and money laundering in connection with a scheme to lobby for easing United States and United Nations sanctions on Iraq and to corruptly influence the award and conditions of Oil for Food contracts.  Park was sentenced to **60 months'** imprisonment.

- *U.S. v. Nisar Chaudhry* (D. Md.) – In April 2018, Chaudhry pled guilty to an information charging a willful failure to register under FARA as an agent of the Government of Pakistan. Although Chaudhry is pending sentencing, the government agreed to allocate for a sentence of **five years' probation**, with six months of home confinement as a condition of probation.

While Patten also violated FARA, the government notes that his cooperation and substantial assistance are critical distinguishing factors from the cases and sentences identified above. In the above cases, none of the defendants successfully cooperated with the government, nor did any of them receive from the government a recommendation for a downward departure pursuant to U.S.S.G. 5K1.1 for providing substantial assistance. Here, as described above and in the Addendum to this Memorandum in Aid of Sentencing, Patten's cooperation was immediate, and his assistance was substantial. Accordingly, Patten's conduct is distinguishable from all of the above-cited cases, and the Court should take that distinction into account when fashioning an appropriate sentence.

## II.    Motion for a Downward Departure

As described above, Patten cooperated with and provided substantial assistance to the government warranting a downward departure. Pursuant to U.S.S.G. § 5K1.1, upon motion of the government, the Court may depart from a guideline sentence to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. While as stated previously there is no applicable guideline for Patten's offense from which the Court would depart in imposing a sentence in this case, the Court should take into account that, in the government's view, Patten has satisfied the criteria set forth in the guidelines for a departure.

Therefore, the government formally moves the Court for such a "departure" in this case so that the Court's ultimately sentence properly reflects Patten's substantial assistance to the government.

## III.    Conclusion

With no applicable guideline range for this offense, the Court has even broader discretion in this case to fashion Patten's sentence.  For the foregoing reasons, the government asks that the Court impose a sentence consistent with the severity of the offense, as well as defendant's characteristics and his early acceptance of responsibility and substantial assistance to the government.

Respectfully submitted,

JESSIE K. LIU
United States Attorney
D.C. Bar No. 472845

By:    _____/s/_____
Fernando Campoamor-Sánchez
Assistant United States Attorney
D.C. Bar No. 451210
555 4th Street, N.W.
Washington, D.C. 20530
202-252-7698
fernando.campoamor-sanchez@usdoj.gov

By:    _____/s/_____
Scott A. Claffee
Trial Attorney
U.S. Department of Justice
National Security Division

CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2019, a copy of the foregoing Government's Memorandum in Aid of Sentencing and Motion for a Downward Departure was sent via electronic mail to Stuart A. Sears, Esquire.

_____/s/_____

Fernando Campoamor Sánchez
Assistant U.S. Attorney
